Richard Johnston – SBN 124524
131A Stony Circle, Suite 500
Santa Rosa, California 95401
Telephone (707) 939-5299
Facsimile (707) 837-9532
RichardJohnstonEsq@gmail.com

*Attorneys for Plaintiff*
*M. Todd Jenks*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M. Todd Jenks | Case Number: |
| Plaintiff, | COMPLAINT |
| vs. | |
| DLA Piper LLP (US); DLA Piper Rudnick Gray Cary US LLP Plan # 525, | |
| Defendants. | |

Plaintiff M. Todd Jenks alleges:

**Jurisdiction and Venue**

1.　　This action arises under the Employee Retirement Income Security Act of 1974, 29 USC § 1001 *et seq.* (ERISA) and more particularly 29 USC §§ 1132(a)(1)(A), 1132(a)(1)(B), 1132 (a)(3), and 1132(g). This court has jurisdiction in this matter under 29 USC § 1132(e) and 28 USC § 1367(a). Moreover the contractual document governing the parties' relationship, as alleged below, provides in relevant part "if you request a copy of Plan documentation … from the Plan and do not receive them within 30 days, you may file suit in a Federal court," and that "the court may require the Plan Administrator to provide the materials and pay you up to $110

1
*Complaint*

a day until you receive the materials." At all relevant times, the named defendants could be found in this district, and certain of defendants' obligations, which obligations defendants failed and refused to perform as herein alleged, were due within this district.

2.      As alleged below, defendant DLA Piper LLP (US)—initially known as DLA Piper Rudnick Gray Cary LLP US—(hereinafter "DLA Piper") was Jenks' employer in 2005 through 2006, and the designated plan administrator of the 2005 long-term disability (LTD) plan for its employees. In this capacity, DLA Piper engaged in a protracted course of dishonest and harmful conduct, among other things misrepresenting and concealing the terms and conditions of Jenks' LTD coverage and failing and refusing to respond properly to his requests for LTD plan documentation so that he could address and rectify DLA Piper's repeated misclassification of his LTD claim, which materially degraded his coverage and his sense of security derived therefrom. Jenks and his counsel submitted serial ERISA requests for plan documentation from April 2007 and extending to 2013, after the issuance of an arbitration award in Jenks' favor. Moreover DLA Piper eventually admitted that it had misclassified Jenks' LTD claim (as a "Director" rather than an attorney) and that it never provided Jenks with an accurate and proper Summary Plan Description (SPD) for his LTD coverage. That notwithstanding, DLA Piper has refused to confirm Jenks' proper classification under the Plan, or to provide Jenks with an applicable SPD as the law explicitly requires for all active claims. Due to these and other derelictions on DLA Piper's part, Jenks seeks a judicial clarification of his rights respecting future benefits under the terms of the DLA Piper 2005 LTD Plan; the compelled production by DLA Piper of an accurate and proper SPD; the imposition of statutory penalties against DLA Piper as a consequence of its continual improper refusal to properly discharge its obligations as an ERISA plan administrator; and an award of statutory attorney fees.

**Factual Background**

3.      Jenks, at relevant times, was employed as an associate attorney by DLA Piper. As

a function of this employment, Jenks was and is a qualified participant in, and beneficiary of, defendant DLA Piper Rudnick Gray Cary US LLP Plan # 525 ("the Plan"). DLA Piper, at relevant times, was the designated plan administrator with respect to the Plan, which was and is an employee benefit plan as defined by 29 USC § 1002(3). The Plan included LTD benefits for eligible employees, including Jenks, which coverage was provided by a group LTD insurance policy, denominated policy no. 30896, issued and administered by UNUM Life Insurance Company of America, in 2005.

*The UNUM LTD insurance coverage*

4. As Jenks did not learn until 2012, UNUM policy no. 30896 was subject to serial amendments. During the initial period of Jenks' employment with DLA Piper, Amendment 37 was in effect. Like its predecessor amendments, Amendment 37 segregated DLA Piper employees into different employee classes, including, without limitation, the following:

- "Attorneys" (employee group 30896-011, also referred to as Class 1), including all attorneys other than capital partners;
- "Directors" (employee group 30896-021, also referred to as Class 2);
- "All Other Employees" (employee group 30896-031, also referred to as Class 3); and
- "Capital Partners" (employee group 30896-041, also referred to as Class 4).

5. UNUM policy no. 30896 extended to each respective employee group/class different coverage terms and conditions. For example, and as relevant here:

- Capital Partners, group 30896-041, enjoyed lifetime "own occupation" coverage, which required only that they remain unable to perform the duties of their own occupation in order to remain eligible to receive benefits.
- Attorneys (i.e. all attorneys who were not Capital Partners), group 30896-011, also enjoyed lifetime "own occupation" coverage.

- Directors, 30896-021, enjoyed "own occupation" coverage for only 60 months, after which they would have to be unable to perform the duties not only of their own occupation, but of any occupation at all, in order to retain eligibility ("any occupation" coverage).
- All Other Employees, group 30896-031, enjoyed "own occupation" coverage for only 36 months, after which they were required to satisfy the "any occupation" standard in order to retain eligibility.

An SPD was also generated for each employee group/class, which described benefits applicable only to the employees in the respective group/class, as required under ERISA. Thus, for example, "Directors" were to be provided with an SPD describing their coverage, but not the coverage afforded to any other employee group/class. Jenks, however, never received an SPD for any of his Plan benefits, disability or otherwise, for his entire tenure with DLA Piper, nor was he ever advised of any benefit amendments.

6.  This employee-classification scheme remained constant throughout various amendments to UNUM policy no. 30896, up until Amendment 39 was issued on April 6, 2005, bearing an effective date of January 1, 2005. Amendment 39 retained the same group-classification scheme described in the preceding paragraph of this complaint, expect that it changed the name of employee group 30896-011 from "Attorneys" to "Non-Capital Partners." Group 30896-011, however, nonetheless continued to cover all attorneys who were not Capital Partners—in other words, non-capital-partner attorneys. Both before and after Amendment 39 was issued, therefore, Jenks, as an associate attorney, belonged in employee group 30896-011, and was never advised of any change in his coverage once Amendment 39 became effective.

*Jenks qualifies for LTD benefits under the UNUM policy starting in 2005, but DLA Piper continuously misrepresents to him the terms and conditions of his coverage, and refuses to provide required plan documentation*

7.  Jenks suffered from a constellation of health issues which, starting in 2005, prevented him from performing the duties of his occupation as an associate attorney at DLA

4

*Complaint*

Piper and rendered him qualified first for partial disability benefits, and later for total disability benefits, under the 2005 LTD Plan. His medical condition ultimately compelled Jenks to resign from DLA Piper's employ in February 2006, under a negotiated resignation agreement. UNUM does not presently dispute, and has never disputed, that his medical condition renders him disabled and eligible to receive benefits under UNUM policy no. 30896.

8. Towards the end of the summer 2006, Jenks sought to initiate a disability claim. To that end he requested that DLA Piper provide him with all applicable plan documentation, including that regarding the 2005 LTD Plan. On September 29, 2006, DLA Piper Benefits Manager Stephanie Riedel provided to Jenks what she described as the "2005 Long Term Disability Plan" applicable to Jenks. This document actually was an SPD with a 1999 effective date, bearing the numerical designation "30896-031" (i.e., applicable to "All Other Employees," or staff) and consistently with that designation indicating that it applied to "All Employees in active employment"; it provided for a maximum monthly benefit of $20,000, and provided for a 36-month "own occupation" period, after which the claimant would have to satisfy the "any occupation" standard in order to retain eligibility for benefits. Although Jenks later learned that this document was not in fact applicable to his claim, and indeed had been superseded through policy amendment many times by the time Riedel provided it to him, at the time Jenks had no way of knowing he had been provided with the incorrect plan document as the SPD represented that it applied to "all employees" without timelines.

9. In the course of pursuing LTD benefits from UNUM, in December 2006 Jenks had occasion to request policy documentation directly from UNUM. In response UNUM provided to him a copy of Amendment 39, with an effective date of January 1, 2005, concurrently advising Jenks that he needed to inquire of the plan administrator in order to secure a copy of the SPD that applied specifically to his claim as UNUM does not maintain SPDs as a matter of internal policy, which are to be prepared by the employer/insured. In turn, Jenks advised Riedel of this fact, and requested an SPD; she advised him on January 3, 2007

that the document she had provided in September 2006 was in fact the SPD applicable to his claim (documentary evidence reflects that she admitted to another employee that she didn't bother searching her files for the applicable plan documentation because, according to her, there was no way Jenks should be covered under the 2005 LTD Plan because the policy had expired at the end of 2005, prior to Jenks initiating a claim).

10.     Notwithstanding Riedel's insistence that Jenks was not covered under the 2005 LTD Plan, in March 2007 UNUM approved Jenks' claim. In a March 30, 2007 letter, UNUM described the terms and conditions of Jenks' coverage, which varied considerably from the documentation he had theretofore been provided by Riedel: this letter explained that his claim was subject to a monthly maximum benefit of $10,000, rather than the $20,000 maximum described in the document Riedel had insisted was the applicable SPD.

*Jenks requests plan documentation in April-May 2007, and is led to believe he receives an adequate response*

11.     Jenks promptly initiated a series of written inquiries to Riedel in an attempt to clear up this discrepancy, during which he requested in writing copies of all pertinent plan documentation, including the SPD applicable to associate attorneys and any amendments to the UNUM policy in question, so that he could review the materials to ascertain the terms and conditions actually applicable to his claim. During April 2007, Riedel made several material representations to Jenks, which were (as Jenks discovered years later as alleged below) utterly false, among them the following:

- On April 2, 2007, she advised him she had "not seen a summary or smaller booklet" pertaining to Jenks' LTD coverage.
- On April 3, 2007, she advised Jenks that the documentation he was seeking "may exist but [is] not readily available to me." The same day she advised him that she was working on securing the documentation in question "but it may take some time."

- On April 10, 2007, she advised Jenks that "it will take at least two weeks to ascertain whether or not the information you are asking for is even available."
- On April 30, 2007, Riedel emailed Jenks to say "I have not forgotten about you," and that she had "another call into our former broker and hope to get a response shortly as I know you are very anxious to get this resolved."

12. Jenks had also advised UNUM that the document Riedel had provided him did not correspond to the provisions of the document UNUM had provided in December 2006, nor with the description conveyed in UNUM's March 30 letter, and, as a result, his monthly benefits were unduly limited by UNUM's posited $10,000 monthly maximum. In response, UNUM evaluated the matter and concluded that Jenks' claim had been misclassified by DLA Piper. In a May 8, 2007 letter—when he had still heard nothing definitive from Riedel—the UNUM disability specialist assigned to Jenks' claim advised that his claim was subject to a $20,000 monthly maximum benefit, without mentioning the employee classification nor the duration of his "own occupation" benefit period. UNUM also paid Jenks benefits in arrears to account for the underpayment he had received thus far as a function of the erroneous information which had been conveyed by DLA Piper to UNUM.

13. Then, on May 9, UNUM sent another letter to Jenks, reclassifying Jenks's claim again, advising "we have received confirmation from your former employer" (i.e., DLA Piper) that his employee classification was as a Director, subject to a $15,000 maximum monthly benefit and a 50-month "own occupation" benefit period (an apparent typographical error, as the coverage in question provided for a 60-month period). UNUM copied DLA Piper's Riedel on this letter.

14. Confused by the repeated changes in classification over the course of a few days, as he was unaware of what was going on in the background between Riedel and UNUM, Jenks requested that his disability specialist state in writing the reason for the series of changes to

ensure that once and for all he was properly classified, and to explain the terms governing his LTD claim. In turn, on May 23, UNUM sent a responsive letter, advising "we initially received information from [DLA Piper] indicating your position as an Attorney was classified as All Other Employees," but that UNUM had "received additional information from [DLA Piper] confirming your position as an Attorney is classified as a Director.... Therefore your long term disability claim will be administered based on the provisions listed for Directors." These provisions, the May 23 letter explained, included a monthly maximum benefit of $15,000, and a 60-month "own occupation" period. Based on everything he knew at the time, Jenks reasonably believed he finally had the information he had long been requesting, that it was sufficient for him to understand the terms and conditions applicable to his LTD claim, and that he was properly classified as a Director, under which classification his monthly disability benefit was no longer limited by the monthly maximum limit, and thus increased, and his own-occupation coverage increased from 36 months to 60 months.

15.     Thereafter, and to the present, UNUM has continued to administer Jenks' LTD claim based exclusively on DLA Piper's "confirmation" that he is properly classified in group 30896-021 as a Director. As a consequence, Jenks remains subject to a 60-month "own occupation" benefits period, which has already expired, such that his benefits are susceptible to being terminated at any time based on a finding that, although he remains unable to perform the duties of his occupation as a litigation associate at DLA Piper, he is able to perform the duties of some other occupation. As alleged below Jenks' proper classification is in group 30896-011, under which he would enjoy lifetime "own occupation" benefits.

*Jenks sues DLA Piper on unrelated claims, which are referred by the court to arbitration; the arbitrator dismisses an ERISA document claim based on solely on Jenks' 2006 document request*

16.     In October 2009 Jenks sued DLA Piper in San Francisco County Superior Court alleging that DLA Piper had mishandled and otherwise behaved tortuously respecting his short-term disability (STD) benefits. Jenks' claims in that lawsuit were not subject to ERISA,

but to state statutory and common law. He raised no claims respecting his coverage under the 2005 LTD Plan in his complaint, in that UNUM was continuing to provide benefits under what Jenks had been led to believe was the proper "Directors" classification. Soon thereafter, on DLA Piper's motion, the superior court compelled arbitration of Jenks' claims.

17. In the ensuing arbitration proceedings, Jenks sought to assert an additional claim under ERISA based on the fact DLA Piper had failed to provide him in a timely manner with the proper disability plan documentation that he requested in September 2006. Jenks was under the impression—an erroneous one, which he subsequently found out, as alleged below—that he had finally received an adequate but untimely response regarding the coverage terms for the "Directors" classification in May 2007. The arbitrator dismissed that claim, which was based exclusively on the document request conveyed in September 2006, as time-barred in response to a motion in limine brought by DLA Piper.

*Jenks requests plan documentation during arbitration proceedings, and DLA Piper claims to comply fully with his requests*

18. In the course of the arbitration proceedings, Jenks made additional written requests for 2005 LTD plan documentation. For instance, on May 3, 2011, Jenks demanded that DLA Piper produce "DLA Piper's employee benefit plans for plans effective at any time between January 1, 2004 and December 31, 2007, including without limitation Summary Plan Descriptions…." On August 4, 2011, DLA Piper responded that it had already "produced all non-privileged descriptions that reasonably can be located of the … 2005 UNUM Long Term Disability Plan." However, DLA Piper had only produced the 1999 SPD for "All Other Employees" that Riedel initially provided in response to Jenks' September 2006 request, and Amendment 39, that UNUM initially provided in response to Jenks' December 2006 request.

*Complaint*

*Information emerges for the first time in January 2012 revealing that DLA Piper's previous responses to document requests had been inadequate and misleading*

19. As elaborated below, additional information emerged for the first time during the arbitration hearing revealing that DLA Piper had improperly withheld extensive LTD plan documentation and related communications bearing on Jenks' LTD classification, in response to both his April-May 2007 written requests and his discovery requests during arbitration proceedings.

20. The arbitration proceedings were arduous and, due significantly to DLA Piper's serial discovery violations and extensive arbitral intervention to rectify same, took several years to complete. Finally, on January 17, 2012 and thereafter, DLA Piper divulged documents containing the following facts, theretofore unknown to Jenks:

- When Riedel advised Jenks on April 2, 2007, that she had "not seen a summary or smaller booklet" pertaining to Jenks' LTD coverage, Riedel had in fact received five sets of precisely such booklets from DLA Piper's former insurance broker, just five and one-half hours earlier—in response to Riedel's having forwarded to the broker Jenks' own email requesting the materials from Riedel; Riedel nonetheless surreptitiously concealed the response—with documents—from Jenks.
- When Riedel advised Jenks on April 3, 2007, that the plan documentation he was seeking "may exist but [is] not readily available to me," in fact those materials were "readily available"—indeed were already reviewed, responded to, and saved in electronic files on Riedel's own computer—as reflected by a responsive email to the broker as well as during her sworn arbitration testimony.
- When Riedel advised Jenks on April 10, 2007, that "it will take at least two weeks to ascertain whether or not the information you are asking for is even available," Riedel in fact already had that very information in hand, ironically by means of forwarding Jenks' written requests to the broker.
- When Riedel advised Jenks on April 30, 2007, that she "had not forgotten him"

and was continuing to seek a response, in fact she was attempting to intervene and forestall UNUM's intended proper classification of Jenks as belonging in group 30896-011, the "Non-Capital Partners" class (historically called the "Attorneys" class) and was seeking instead to cause him to be erroneously classified to his detriment, so that he would be without lifetime own-occupation coverage, which she knew was significant.

21. Information disclosed on January 17, 2012, and thereafter under arbitral compulsion, also revealed, among other things, that:

- Unbeknownst to Jenks, UNUM had independently and definitively concluded that Jenks was properly classified in group 30896-011 as a Non-Capital Partner under Amendment 39, despite the fact that Jenks was not a partner. Debbie Larsen, the UNUM large account sales representative in charge of the account and responsible for making the determination, advised Riedel on May 1, 2007, that Larsen reached this conclusion after reviewing the broker's notes requesting the changes in Amendment 39 and related plan documentation.
- Riedel had argued with Larsen about that determination, insisting that, based on her own uninformed speculation about the circumstances surrounding the adoption of Amendment 39 (which occurred before Riedel was even employed by DLA Piper), Jenks should not be classified in group 30896-011, but Larsen steadfastly maintained that Jenks was properly classified in that group. Larsen squarely rejected Riedel's claims that Larsen was incorrect because (1) Jenks was not a non-capital partner, and (2) DLA Piper paid premiums for lesser coverage.
- Riedel, rather than continue to engage Larsen, instead did an "end run" around her, approaching UNUM's claims personnel with manufactured new reasons to persuade them to classify Jenks as a Director, leaving Larsen completely out of the loop.
- Riedel advised UNUM's claims personnel that, despite the fact that DLA Piper

11
*Complaint*

accepted Amendment 39 as written, DLA Piper intended Amendment 39 to move associate attorneys into the "Directors" classification; that DLA Piper had paid premiums based on that intention; and that therefore that was the proper classification for Jenks' ongoing claim (notably, DLA Piper never generated or disseminated a Summary of Material Modifications to that effect, as required by 29 USC § 1024(a)(6)(b)).

- Riedel's assertions to UNUM's claims personnel in that connection were based on her own uninformed speculation; on additional uninformed speculation on the part of her immediate DLA Piper supervisor, National Director of Compensation and Benefits Tracey McLaughlin (McLaughlin, like Riedel, had played no role whatsoever in the UNUM policy amendment and had no basis for opining on what anyone's "intentions" were in that connection) that directors and associate attorneys were always intended to be in the same class; on Riedel's utterly erroneous view that Jenks was somehow inappropriately "double-dipping" in receiving UNUM benefits in addition to wholly distinct and separately payable STD benefits; and on her animus and bias against Jenks, exemplified by statements by Riedel such as her May 2, 2007 email to McLaughlin (sent when Riedel was concerned that UNUM might properly classify Jenks in group 30896-011) in which she asserted "The irony is that we aren't paying:)!! Part of me wants to say to UNUM— 'I have done my best to tell you the facts and do the right thing but if you want to argue—go ahead and pay him, it's your dime now.'. But that other part of me … who knows he's double-dipping as it is … gets nauseous at the thought."
- Riedel's "end run" around Larsen is what resulted in UNUM's classifying Jenks as a Director, as conveyed in UNUM's May 2007 correspondence with Jenks.
- With Jenks' request for information and documentation still pending, Riedel and McLaughlin contemplated sending to Jenks the SPD for group 30896-011, along with Larsen's email to Riedel explaining why that SPD governed Jenks's claim,

12

*Complaint*

which would have sufficed to fully apprise Jenks of the relevant circumstances—but instead jointly determined to tell Jenks that *none* of the SPD's "are actually correct for his situation and so I won't send him one." In fact DLA Piper didn't even do that much: it didn't offer Jenks any explanation, accurate or otherwise. All Riedel did was to send him, *sans* explanation, a facially obsolete SPD which Riedel admitted in her sworn arbitration testimony was not, and could not have been, applicable to Jenks—instead of the "Directors" SPD that she had just succeeded in convincing UNUM claims to apply to Jenks' claim.

22. In light of these revelations, it also became evident that DLA Piper's responses to Jenks' document requests during the arbitration proceedings had been inadequate and misleading. DLA Piper had not, in fact, "produced all non-privileged descriptions that reasonably can be located of the … 2005 UNUM Long Term Disability Plan," but had withheld from production the same SPDs and materials Riedel had secreted from Jenks back in 2007. Thus despite its sworn representation to the contrary, DLA Piper failed and refused to respond adequately to the request for plan documentation conveyed by Jenks during the arbitration proceedings. This violation by DLA Piper of its duties in this connection also became known to Jenks on or after January 17, 2012, as alleged above.

23. At the conclusion of arbitration proceedings, DLA Piper submitted an April 16, 2013 closing arbitration brief in which it admitted, for the first time, that "none [of the five SPDs for the LTD Plan] clearly applied to [Jenks'] claim." Thus Jenks learned from the DLA Piper brief, for the first time, that none of the documentation theretofore provided to him, nor even any of the extant documentation which had been withheld from him, constituted a proper SPD applicable to his claim according to DLA Piper. In so asserting, DLA Piper also admitted that Jenks was not covered under the "Directors" classification, despite evidence that Riedel and McLaughlin had celebrated (Riedel to McLaughlin, May 9, 2007: "UNUM has seen the light"; McLaughlin to Riedel, in response: "Wahoo!") upon learning that they had succeeded in

reversing Larsen's reclassification of Jenks' claim into group 30896-011, which had always included associate attorneys like Jenks.

24. In a June 10, 2013 reply to DLA Piper's closing arbitration brief, Jenks invoked a legal requirement that, if no applicable SPD existed for a particular claim, then the plan administrator was obliged to create one, a proposition Jenks later reiterated to DLA Piper as alleged below. Nevertheless DLA Piper has failed and refused to this day to generate and provide to Jenks an applicable SPD, a continuing breach of fiduciary duty that continues to cause Jenks a significant detriment, including the incurrence of considerable legal fees and costs.

*After arbitration proceedings conclude, Jenks again requests plan documentation from DLA Piper, and again DLA Piper fails and refuses to provide any; and DLA Piper refuses to acknowledge Jenks' proper classification in group 30896-011*

25. On October 1, 2013, after arbitration proceedings had concluded, Jenks requested of DLA Piper in writing that it provide "plan documents pertinent to his existing claim under Amendment 39 of DLA Piper's [LTD] plan, without delay." Jenks' request noted that DLA Piper had asserted in its closing arbitration brief that there was no SPD that applied to Jenks' claim, and noted again in that connection, citing to case law, that "DLA Piper is obligated to generate one that comports with the Amendment 39 plan." Riedel responded on October 31, 2013, providing copies of documentation she knew Jenks already had, but nothing which remotely constituted what Jenks had requested: an accurate and adequate SPD applicable to his ongoing LTD claim. DLA Piper therefore failed and refused in this instance as well to provide the required benefit plan documentation.

26. Thereafter, Jenks counsel specifically requested that Riedel provide the SPD applicable to associate attorneys under Amendment 37 to policy no. 30896, which immediately preceded Amendment 39 and so still denominated group 30896-011 as "Attorneys"

(Amendment 38, which was issued the same day as Amendment 39 but made other changes not here relevant, also continued to use the "Attorneys" designation for that group). In response Riedel untruthfully asserted that no SPDs had been generated under Amendment 37, and thus failed to respond sufficiently to that request as well.

27. On December 15, 2014, Jenks requested in writing that DLA Piper acknowledge in writing to UNUM that his proper classification under the Plan is under group 30896-011. Jenks requested no other accommodation from DLA Piper, and the acknowledgement he sought would not have cost DLA Piper anything, nor otherwise imposed any detriment whatsoever on DLA Piper. On January 12, 2015, DLA Piper arbitrarily and without cause again refused to acknowledge Jenks' proper classification, thereby perpetuating the admitted misclassification of Jenks' claim, and materially degrading his "own occupation" coverage, thus compromising the security for which disability insurance is intended.

**First Claim for Relief
against the Plan
For clarification of future rights in connection with an ERISA benefit plan
pursuant to 29 USC §1132(a)(1)(B)
and attorney fees and costs pursuant to 29 USC §1132(g)**

28. Jenks refers to each and every foregoing paragraph of this complaint and incorporates those paragraphs as though set forth in full in this cause of action.

29. Jenks' proper classification as an associate attorney under the 2005 LTD Plan is in group 30896-011, errantly denominated "Non-Capital Partners" because of the manner in which DLA Piper requested a policy change, as UNUM sales originally determined on its own. Yet DLA Piper, as plan administrator, wrongly induced UNUM claims to reclassify Jenks as a Director, based on false representations that Amendment 39 was intended to move associate attorneys into the "Directors" group, and now refuses to acknowledge his proper classification, thereby casting undue and significant doubt on Jenks' status under the Plan and the terms and conditions applicable to his benefits claim.

30. As a direct and proximate result of the improper acts and/or omissions herein alleged, Jenks has been compelled to incur reasonable attorney fees and other costs associated with the investigation of this claim and the prosecution of this action.

**Second Claim for Relief
against DLA Piper
for breach of fiduciary duties
pursuant to 29 USC §1132(a)(3)
and attorney fees and costs pursuant to 29 USC §1132(g)**

31. Jenks refers to each and every foregoing paragraph of this complaint and incorporates those paragraphs as though set forth in full in this cause of action.

32. In its capacity as Plan administrator, DLA Piper owes to Jenks certain fiduciary duties, among them that DLA Piper discharge its duties:

- for the exclusive purposes of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan;
- with the care, skill and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
- in accordance with the documents and instruments governing the Plan; and
- without misleading Jenks or misrepresenting to him information about the terms and conditions governing his ongoing claim for LTD benefits.

DLA Piper was also obligated, as a function of its fiduciary duties and obligations, to produce an accurate and adequate SPD describing the terms and conditions applicable to Jenks' ongoing LTD benefits claim under group 30896-011, or to generate an accurate and adequate SPD in the first instance based on its contention that no applicable SPD exists for associate attorneys as a consequence of confusing/errant nomenclature implementation (changing "Attorneys" to "Non-Capital Partners"); to acknowledge to UNUM that its prior determinations had been erroneous and that Jenks is properly classified as belonging to group

30896-011; and to fully and adequately investigate the facts and circumstances surrounding its refusal to so acknowledge.

33. DLA Piper's acts and omissions as alleged herein constitute a breach of its fiduciary duties owed to Jenks.

34. As a direct and proximate result of the improper acts and/or omissions herein alleged, Jenks has been compelled to incur reasonable attorney fees and other costs associated with the investigation of this claim and the prosecution of this action.

**Third Claim for Relief**
**against DLA Piper**
**for statutory penalties for failure to provide plan documentation**
**pursuant to 29 USC §1132(a)(1)(A)**
**and attorney fees and costs pursuant to 29 USC §1132(g)**

35. Jenks refers to each and every foregoing paragraph of this complaint and incorporates those paragraphs as though set forth in full in this cause of action.

36. DLA Piper, as plan administrator, was and is required by statute and regulation to provide plan documentation within 30 days, upon written request therefor, by or on behalf of a participant or beneficiary.

37. Jenks, a participant and beneficiary under the Plan, requested in writing, many times, that DLA Piper provide him with copies of documents under which the Plan was operated.

38. DLA Piper failed and refused to timely provide Jenks with the documentation to which he was entitled. DLA Piper is therefore liable, separately for each request by or on behalf of Jenks to which it failed to timely or adequately respond, for penalties of up to $110 per day,

under pertinent provisions of ERISA, for each day following the expiration of a 30-day deadline measured from each respective request for documentation, during which it has failed to produce the required documents.

39. As a direct and proximate result of the improper acts and/or omissions herein alleged, Jenks has been compelled to incur reasonable attorney fees and other costs associated with the investigation of this claim and the prosecution of this action.

WHEREFORE, Jenks prays for judgment as follows:

AS TO THE FIRST CLAIM FOR RELIEF:

1. A declaration clarifying Jenks' rights to future benefits under the Plan, to wit that he shall be classified for Plan purposes as a member of group 30896-011, whether called Non-Capital Partners, Non-Capital-Partner Attorneys, or Attorneys;

2. An award of attorney fees and costs of suit as authorized by statute;

3. For such other and further relief as the court may deem proper.

AS TO THE SECOND CLAIM FOR RELIEF:

4. Equitable injunctive relief compelling DLA Piper to acknowledge in writing that Jenks be classified for Plan purposes as a member of group 30896-011, whether called Non-Capital Partners, Non-Capital-Partner Attorneys or Attorneys for purposes of the Plan, and compelling DLA Piper to produce forthwith the applicable SPD; or, in the alternative, compelling DLA Piper to generate and produce to Jenks an SPD accurately describing the terms and conditions applicable to his ongoing LTD claim;

5.	An award of attorney fees and costs of suit as authorized by statute;

6.	For such other and further relief as the court may deem proper.

AS TO THE THIRD CLAIM FOR RELIEF:

7.	As to each of Jenks' requests for plan documents, civil penalties of $110 per day for each day following the expiration of the respective statutory deadlines during which required plan documents were not provided, up to the present and continuing;

8. An award of attorney fees and costs of suit as authorized by statute;

9. For such other and further relief as the court may deem proper.

Dated: January 16, 2015

s/Richard Johnston
Richard Johnston
*Attorney for Plaintiff*
*M. Todd Jenks*
