David J. Reis (SBN 155782)
E-mail: David.Reis@aporter.com
Christopher T. Scanlan (SBN 211724)
E-mail: Christopher.Scanlan@aporter.com
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: +1 415.471.3100
Fax: +1 415.471.3400

Attorneys for Defendant
DLA Piper LLP (US)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| M. Todd Jenks,<br><br>              Plaintiff,<br><br>     vs.<br><br>DLA Piper LLP (US) in its capacity as Plan Administrator of DLA Piper Rudnick Gray Cary US LLP Plan #525,<br><br>              Defendant. | Case No.: 15-cv-00254-VC<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANT DLA PIPER LLP (US) FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (FED. R. CIV. P. 56)**<br><br>Date:          January 19, 2017<br>Time:          10:00 a.m.<br>Courtroom:  4 - 17th Floor<br>Judge:         Hon. Vince Chhabria |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

## TABLE OF CONTENTS

2

**Page**

3  NOTICE OF MOTION AND MOTION ...................................................................................1

4  STATEMENT OF ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3)) ...................................1

5  MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

6  INTRODUCTION ....................................................................................................................1

7  FACTUAL BACKGROUND ...................................................................................................3

8      I.      FACTS PRIOR TO THE 2011-2012 ARBITRATION HEARING ...........................3

9      II.     THE ARBITRATION HEARING ...............................................................................8

10      III.   JENKS' POST-ARBITRATION DOCUMENT REQUESTS .................................11

11      IV.   JENKS' SECRET BUYOUT AGREEMENT WITH UNUM .................................12

12  LEGAL STANDARD ..............................................................................................................14

13  ARGUMENT ..........................................................................................................................14

14      I.      JENKS' BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A
15           MATTER OF LAW ....................................................................................................14

16           A.    Jenks' Breach Of Fiduciary Claim Is Barred By The Statute Of
               Limitations ...............................................................................................14

17           B.    Jenks' First Claim Also Fails Because His Damages Are Either
18                 Non-Existent Or Too Speculative .............................................................16

19      II.     JENKS' CLAIM FOR DAILY PENALTIES ALSO FAILS AS A
         MATTER OF LAW ....................................................................................................19

20           A.    DLA Piper Was Not Required To Create An Entirely New
               Summary Plan Description For Jenks In Its October 31st Response,
21                 And Its Response Did Not Prejudice Jenks. ..............................................20

22           B.    Jenks' Claim Is Really An Attempt To Receive Daily Penalties For
               The Alleged Fiduciary Breach Associated With Jenks'
23                 Classification As A "Director." ..................................................................23

24  CONCLUSION ........................................................................................................................25

25

26

27

28

- i -

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000)........................................................................................... 14

*Allen v. Atl. Richfield Ret. Plan*
480 F. Supp. 848 (E.D. Pa. 1979)] ................................................................................... 21

*Blanton v. Anzalone*,
760 F.2d 989 (9th Cir. 1985)....................................................................................... 15, 16

*Britz Fertilizers, Inc. v. Bayer Corp.*,
665 F. Supp. 2d 1142 (E.D. Cal. 2009)............................................................................. 16

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001)............................................................................................. 24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................................... 14

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)..................................................................................................... 18, 19

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
200 F.3d 1223 (9th Cir. 2000)........................................................................................... 22

*Echague v. Metro. Life Ins. Co.*,
43 F. Supp. 3d 994 (N.D. Cal. 2014) ................................................................................ 19

*Fagundes v. Lane*,
No. 12–CV–1634, 2014 WL 1276373 (E.D.N.Y. Mar. 27, 2014)..................................... 18

*Hall v. Beals*,
396 U.S. 45 (1969) ............................................................................................................ 24

*Jackson v. E.J. Brach Corp.*,
937 F. Supp. 735 (N.D. Ill. 1996) ............................................................................... 20, 21

*Kaiser Permanente Emp.'s Pension Plan v. Bertozzi*,
849 F. Supp. 692 (N.D. Cal. 1994) ............................................................................. 22, 23

*Kanawi v. Bechtel Corp.*,
590 F. Supp. 2d 1213 (N.D. Cal. 2008) ............................................................................ 15

*Keene Corp. v. U.S.*,
508 U.S. 200 (1993)........................................................................................................... 24

*Kenseth v. Dean Health Plan, Inc.*,
    722 F.3d 869 (7th Cir. 2013)......................................................................................... 19

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ..................................................................................................... 14

*Marshak v. Ballesteros*,
    72 Cal. App. 4th 1514 (1999)....................................................................................... 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................................... 14

*McCravy v. Metro. Life Ins. Co.*,
    690 F.3d 176 (4th Cir. 2012)........................................................................................ 19

*McDonald v. John P. Scripps Newspaper*,
    210 Cal. App. 3d 100 (1989) ....................................................................................... 16

*Mozzetti v. City of Brisbane*,
    67 Cal. App. 3d 565 (1977) ......................................................................................... 16

*Navellier v. Sletten*,
    262 F.3d 923 (9th Cir. 2001)........................................................................................ 16

*Parsons v. Bd. of Trustees of the Nev. Resort Ass'n*,
    No. 12-cv-00299, 2012 WL 3319742 (D. Nev. Aug. 13, 2012) .................................. 24

*Russello v. U.S.*,
    464 U.S. 16 (1983) ....................................................................................................... 24

*Skinner v. Northrop Grumman Ret. Plan B*,
    673 F.3d 1162 (9th Cir. 2012)................................................................................ 19, 23

*Sunderlin v. First Reliance Standard Life Ins. Co.*,
    235 F. Supp. 2d 222 (W.D.N.Y. 2002) .................................................................. 21, 22

*Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*,
    629 F. Supp. 2d 259 (S.D.N.Y. 2007) ........................................................................ 18

**STATUTES AND RULES**

29 U.S.C.
    § 1001............................................................................................................................. 1
    § 1022............................................................................................................................. 6
    § 1113........................................................................................................................... 14
    § 1113(1)....................................................................................................................... 15
    § 1113(2)....................................................................................................................... 15
    § 1132(a)(3).................................................................................................................. 24
    § 1132(c)(1).................................................................................................................. 24

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

Fed. R. Civ. P.
    56.................................................................................................................................. 1
    56(a) ........................................................................................................................... 14

**OTHER AUTHORITIES**

1 Ronald J. Cooke, ERISA Practice and Procedure § 3.27 (2d ed. 2012) ........................................ 21

1

### NOTICE OF MOTION AND MOTION

2

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3
PLEASE TAKE NOTICE THAT on January 19, 2017 at 10:00 a.m. in Courtroom 4 - 17th

4
Floor, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102,

5
the Honorable Vince Chhabria presiding, Defendant DLA Piper LLP (US) ("Defendant" or "DLA

6
Piper") will and hereby does move the Court to grant summary judgment (either in whole or in part)

7
in favor of DLA Piper pursuant to Rule 56 of the Federal Rules of Civil Procedure.

8
This Motion is made on the grounds that there exists no genuine issue of material fact with

9
respect to Plaintiff M. Todd Jenks' ("Plaintiff" or "Jenks") claims that DLA Piper breached its

10
fiduciary duties to him and failed to provide him with plan documentation as required under the

11
Employee Retirement Income Security Act, 29 U.S.C. section 1001, *et seq.* ("ERISA"), and that

12
DLA Piper is entitled to judgment as a matter of law.  This Motion is based on the accompanying

13
papers, all proper subjects of judicial notice (including the proceedings and judgment in the parties'

14
prior litigations of *Jenks v. DLA Piper Rudnick Gray Cary US LLP*, Case No. CGC-09-493491 (Cal.

15
Super. Ct. San Francisco) ("*Jenks I*") and *Jenks v. DLA Piper (US) LLP*, Case No. 13-cv-05381-VC

16
(U.S.D.C. N.D. Cal.) ("*Jenks II*") and any evidence and argument allowed at the hearing.

17

### STATEMENT OF ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))

18

19
1.    Whether summary judgment should be granted in DLA Piper's favor in Jenks' breach of
fiduciary claim because either (1) the claim is time barred by the applicable statute of
limitations; (2) ERISA does not permit the damages remedy he seeks; and (3) Jenks has

20
offered no proof of any actual damages suffered.

21
2.    Whether summary judgment should be granted in DLA Piper's favor in Jenks' failure to
provide plan documentation claim because (1) DLA Piper timely provided Jenks with all

22
summary plan descriptions ("SPDs") in existence under Amendment 39 to the Plan (defined
below) and (2) DLA Piper was not obligated to voluntarily reform the Plan to create a new

23
SPD for a benefits classification not found in the Plan.

24

### MEMORANDUM OF POINTS AND AUTHORITIES

25

### INTRODUCTION

26
To paraphrase Chaucer, all things must come to an end.  This applies even to Plaintiff M.

27
Todd Jenks' multi-year, multi-forum campaign to extract damages and penalties from his former

28
employer, DLA Piper, over a long-term disability (LTD) insurance plan that paid Jenks every cent

of disability benefits he ever claimed—up to and until he negotiated a lump-sum buyout of his

UNUM insurance policy in 2015.  Not content with his payday, however, Jenks' First Amended and

Supplemental Complaint ("FAC"), ECF No. 40, alleges two claims under ERISA: (1) breach of

fiduciary duty; and (2) daily penalties, pursuant to ERISA section 502(c), for failure to provide plan

documentation.  Both claims stem from Jenks' allegation that DLA Piper should have deemed Jenks

to belong to an "Attorneys" classification documented in prior versions of the benefit plan

documents, but not the version (Amendment No. 39) that UNUM applied to Jenks' claim.  As a

result—and notwithstanding a 2013 arbitration award rejecting similar (identical, actually) claims—

this dispute over Jenks' disability benefits enters its tenth year.

   The current claim for breach of fiduciary duty asserts that Jenks' buyout with UNUM was

somehow thrust upon him at a fire-sale price because the alleged "Attorneys" error permitted

UNUM to discontinue his benefits, at any time prior to age 65, under a narrow definition of

"disability."  Jenks claims he is entitled to the difference between the buyout amount and some

hypothetical, greater buyout amount based on a more generous definition of "disability."  As a basic

matter, however, ERISA does not permit the recovery of damages, only equitable relief, and there is

no basis in equity for the relief Jenks seeks.  Moreover, discovery from UNUM reveals that Jenks

was in no way forced to accept the UNUM buyout, which totaled █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Given these revelations, the breach of fiduciary duty claim has no factual basis, and the notion that

Jenks could have negotiated an even higher settlement more is pure speculation.  In addition, the statute of limitations on the claim ran no later than March 2014—three years after Jenks learned the key facts regarding the "Attorneys" issue.

Jenks' claim for daily penalties under ERISA section 502(c) also fails.  On October 1, 2013, just a month after losing all of the ERISA claims asserted in his arbitration, Jenks re-requested a copy of the long term disability ("LTD") benefit plan and the summary plan description from DLA Piper.  DLA Piper responded by providing Jenks with a copy of the Plan (which contained all the required ingredients of a "summary plan description" under ERISA) as well as a series of booklets providing a summary plan description for each of the Plan's various beneficiary classifications.  It is undisputed that the plan document contained no reference to an "Attorneys" classification and, as an unsurprising result, none of its summary plan descriptions described an "Attorneys" classification either.  Jenks counters that the omission of the "Attorneys" information was DLA Piper's fault and, as a result, he claims DLA Piper needed to rewrite the plan documents and create a new summary plan description based on the new plan documents.  ***But this contention, even if true, would only state a claim to reform the plan documents, not a claim for daily penalties under ERISA.***  In other words, DLA Piper satisfied its ministerial duty to provide current versions of plan documentation, which is all that it was required to do to avoid section 502(c) penalties.  A separate action for reformation—which would now be pointless because Jenks is no longer covered by the plan—could have addressed Jenks' concerns, but Jenks chose instead to cash out and sue for still more.

Accordingly this Court should grant summary judgment to DLA Piper and, once and for all, put an end to this litigation.

## FACTUAL BACKGROUND

### I.     FACTS PRIOR TO THE 2011-2012 ARBITRATION HEARING

Gray Cary Ware & Friedienrich LLP ("Gray Cary") provided long term disability insurance to its staff through an insured ERISA plan, administered by various affiliates of the UNUM Corporation ("UNUM").  (FAC ¶4.)

In 2000, Jenks accepted an offer of employment with Gray Cary as an associate attorney. (*Jenks II*, Dkt. 9-1 at 3-6.)[1]  In 2004, Gray Cary agreed to merge with Piper Rudnick LLP, eventually creating DLA Piper.  (*Id.*, Dkt. 9-7 at 14-15; Dkt. 9-8 at 1-4.)

The operative version of the UNUM LTD plan document (the "Plan") immediately prior to the DLA Piper transaction was Amendment No. 36, effective, July 1, 2004.  (Declaration of Christopher T. Scanlan ("SD"), filed concurrently herewith,  Ex. A.)  Under Amendment No. 36, there were several covered classifications, with varying levels of benefits: Capital Partners, All Executives, Attorneys, Directors, and All Other Employees.  Under the plan, Gray Cary fully paid the premiums for Attorneys (but not for Capital Partners).  (*Id.* at 2 ("WHO PAYS FOR THE COVERAGE").) Attorneys received a maximum benefit of, as relevant here, "60% of monthly earnings to a maximum benefit of $15,000 per month[.]"  Capital Partners could receive monthly payments up to $20,000.  Attorneys, like Capital Partners and All Executives, were eligible for continuation of benefits through age 65, so long as the employee was disabled from performing his "regular occupation." Other classifications were subject to time limits on their "regular occupation" benefits, after which they could only maintain benefits if they were incapable of performing "any occupation." (*Id.* at 3 ("HOW DOES UNUM DEFINE DISABILITY?".)

The DLA Piper merger was consummated on January 1, 2005, at which point Jenks became an associate attorney at DLA Piper—a position he held for the duration of his employment.  (*Jenks II*, Dkt. 9-7 at 14-15; Dkt. 9-8 at 1-4.)

DLA Piper maintained UNUM as the LTD carrier for former Gray Cary personnel throughout 2005.  However, three amendments to the Plan documents ensued during 2005:

(1)     Amendment No. 37 was dated February 15, 2005 but was retroactive to January 1, 2005.  It was a complete restatement of the Plan documents.  Amendment No. 37 made no substantive changes other than to reflect the employer's new name (DLA Piper).  As such, it continued to recognize a separate classification for Attorneys eligible for a $15,000 monthly benefit

---

[1] For ease and convenience, DLA Piper will use the same citation style for cites to the *Jenks II* record as it did in its motion to dismiss, ECF No. 41.

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

with benefits until age 65 so long as the attorney could not perform his or her "regular occupation." Premiums were still fully paid by the employer.  (SD Ex. B at 4-5 ("WHO PAYS FOR THE COVERAGE;" "MONTHLY BENEFIT").)

(2)    Amendment No. 38, a three-page document dated April 6, 2005, set forth various date-dependent definitions of the term "pre-existing condition." (SD Ex. C.)

(3)    Amendment No. 39, the final amendment, fully restated the Plan.  Like Amendment No. 38, it was dated April 6, 2005 but it had a stated effective date of January 1, 2005.  Amendment No. 39 deleted all references to Attorneys, apparently placing them in the same classification as "All Other Employees."  It also introduced a new classification: "Non-Capital Partners."  Like Capital Partners (but unlike Attorneys in the prior Amendments), Non-Capital Partners could receive a monthly benefit of up to $20,000; also, unlike Attorneys previously, they were expected to pay their own Plan premiums.  (SD Ex. D at 4-5 ("WHO PAYS FOR THE COVERAGE;" "MONTHLY BENEFIT".)  The Plan entitled both Capital Partners and Non-Capital Partners to a "regular occupation" disability definition through age 65.[2]   The only remaining group at the $15,000 level, Directors, experienced no changes to their benefits: DLA Piper paid their premiums and their benefits were subject to a 60-month "regular occupation" limit.  (*Id*.)

Also in early 2005, Jenks asked DLA Piper for a reduced work schedule (with a roughly commensurate salary reduction) to accommodate certain medical issues.  (*Jenks II*, Dkt. 1 ¶18.)

On January 1, 2006, DLA Piper switched the LTD carrier for former Gray Cary personnel to Standard Insurance Company ("The Standard").  (*Id.* ¶30.)  The Standard also served as the third-party administrator for DLA Piper's short-term disability ("STD") plan (a one-year salary continuation plan fully paid out of DLA Piper's general assets).  (*Id.*, Dkt. 10-9 at 8.)

---

[2] A comparison of Amendment No. 39 with Amendment No. 37 (the last completely restated plan amendment) makes clear that the drafter did ***not*** simply replace the word "Attorney" with "Non-Capital Partner" in the later document.  First, Non-Capital Partners were given the same $20,000 monthly benefit maximum as Capital Partners, whereas Attorneys previously had a $15,000 monthly maximum (the same as Directors).  Second, Non-Capital Partners were required to pay for their premiums; while Attorneys, like Directors in Amendment No. 39, had never been required to pay for their own premiums under any previous plan amendment.  Jenks does not allege, nor is there any evidence, that he ever paid for his own premiums while employed by DLA Piper.

In February 2006, DLA Piper and Jenks entered into an agreement to terminate Jenks' employment effective in August 2006.  (*Id.*, Dkt. 1 ¶22.)  Later that year, Jenks filed a claim with The Standard for benefits under the DLA Piper STD plan.  (*Id.*, Dkt. 10-9 at 13-14.)  A dispute arose between Jenks and The Standard regarding medical documentation requirements.  The Standard ultimately concluded that there was insufficient evidence of Jenks' claimed disability.  (*Id.* at 15.)

Shortly before his August 2006 separation, Jenks began a series of inquiries—continuing past his separation date—into the availability of various benefits from DLA Piper and its insurance carriers, including both long- and short-term disability.  (*Jenks II*, Dkt. 1 ¶23.)  At the end of August 2006, Jenks formally requested that DLA Piper provide him with a copy of all employee benefit plan documents and summary plan descriptions (SPDs).  (*Id.* ¶ 85.)

In late 2006, Jenks filed a claim with UNUM for LTD benefits.  As part of this process, in December 2006, Jenks received from UNUM a copy of the "Amendment 39" version of the UNUM policy.  (FAC ¶10.)  The plan document he received contained all the elements of a SPD under the regulations of the Employee Benefits Security Administration, 29 C.F.R. section 2520.102-3 (construing SPD requirements of 29 U.S.C. section 1022).  ( SD Ex. D.)

In March 2007, UNUM approved Jenks' claim for benefits, capping them at $10,000 per month (the "All Other Employees" limit).  (*Jenks II*, Dkt. 1 at 9-10.)  Shortly thereafter, Stephanie Riedel, the DLA Piper benefits manager responsible for dealing with Jenks' benefits issues, then began to communicate with UNUM regarding Jenks' appropriate benefits classification.  UNUM at one point suggested he should be classified as a "Non-Capital Partner," but Riedel informed UNUM that it would be preferable to classify Jenks in a benefit class providing a monthly maximum of $15,000.  (*Id.*, Dkt. 11-7 at 19)  UNUM ultimately chose to administer the claim as if Jenks were in the "Director" group, resulting in Jenks' receiving a full 60% income-replacement benefit rather than the lower, capped amount that would otherwise have applied.[3]  (*Id.*  at Dkt. 9-1 at 10-12.)

---

[3] As the Court is aware, Riedel separately sent pointed emails to her superior at DLA Piper about Jenks' requests.  Despite Riedel's frustrations with Jenks, it was Riedel who (successfully) lobbied UNUM to *increase* Jenks' benefits from the $10,000 maximum provided to "All Other

(Footnote Cont'd on Following Page)

In October 2009, Jenks filed a complaint in San Francisco Superior Court against DLA Piper and The Standard, alleging various issues relating to the handling of Jenks' claim under the non-ERISA STD plan, including an under-calculation of benefits.  (*Jenks II*, Dkt. 10-7 at 12-15; Dkt. 10-8; Dkt. 10-9 at 1-2.)  This initiated the series of judicial and arbitration proceedings now known as "*Jenks I*."  The original *Jenks I* complaint briefly referenced Jenks' alleged difficulties securing benefits under the ERISA LTD plans (both the 2005 UNUM LTD Plan and the 2006 The Standard Plan), but it did not plead any causes of action in that regard.  (*Id.*)

In March 2010, Jenks received a copy of his claim file from UNUM.  (*Id.*, Dkt.11-16 at 5.)  The claim file included a May 9, 2007 notation by a claims supervisor (Mr. Avila) of a telephone call with Riedel, in which Riedel asserted that "attorneys" should be grouped with directors, notwithstanding the lack of such language in the plan documents.  (*Id.*, Dkt. 11-7 at 66)  Those notes read, in part:

> Stephanie Rydell [sic] (Policy Holder) called stating that UNUM has wrong facts regarding Todd's classification.  He is not at the 20K max.  He should be at the 15K max benefit.  They have 3 classes (Partners, Attorney, and all others).  Todd belongs to the attorney class which is a max 15K benefit. . . . She advised that the way the contract is written it is understandable why we initially paid him at the 10K max.  The contract outlines 3 groups (Partners/Executives, Directors, and all Others).  Based on this wording, it would be logical that Todd is all others.  However, there was a 2005 amendment in which Attorneys are part of the Director group.  Definitely not the Partner group nor the Others group. . . .

(*Id,* at 19.)  Notably, the claim file also included a copy of Amendment No. 37 (the last, fully restated version of the plan document to reference an "Attorneys" classification), in which "Attorneys" were numerated as Classification Group #30896-011.  (*Id.* at 39.)  The file also included an email from an UNUM manager stating that she thought Jenks belonged in the Non-Capital Partners class.  (*Id.*, Dkt. 11-6 at 3.)  That same Classification Group number was used for the "Non-Capital Partners" Group in Amendment No. 39, which Jenks already had.  (FAC ¶10.)

In July 2010, after *Jenks I* was compelled to arbitration, Jenks filed a First Amended Complaint, largely repeating the prior (non-ERISA) allegations about the STD plan (*Jenks II*, Dkt.

---

(Footnote Cont'd From Previous Page)

Employees."  In any event, it was ultimately UNUM's decision (*not* DLA Piper's), to classify Jenks as a "Director."

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

10-9 at 6-25; Dkt. 10-10 at 1-12.).  He did however, include a claim under ERISA for penalties under ERISA section 502(c) for a failure to provide plan documents under ERISA.  (*Id.* at 3.)

In March 2011, DLA Piper produced to Jenks, in conjunction with pre-arbitration discovery, a serious of handwritten "Communication Records" documenting Riedel's telephone calls regarding Jenks (marked DLA 3390 and 3392).  (*Id.*, Dkt. 11-17 at 15.)  These included notes of a May 8, 2007 discussion in which Riedel and a UNUM claims agent discussed that each classification under the UNUM plan had its own "Definition of Disability": the "Directors" classification had a "5 year change for Directors" but "years ∞" (the infinity sign) for "Partners." (*Id.*, Dkt. 11-7 at 17.)  A separate memorandum, dated May 9, 2007, describes a conversation between Riedel and a UNUM claims supervisor about Riedel's recommendation for placing Jenks in the "Directors" group despite the lack of express language in the plan documents authorizing this classification. (*Id.* at 19.)

By March 2011, therefore, Jenks possessed all the evidence he needed to establish that: (1) the UNUM LTD plan had previously provided benefits for "Attorneys"; (2) the group number previously used for "Attorneys" was now being used for the "Non-Capital Partners Group"; (3) DLA Piper partners, like "Attorneys" had an unchanging "your occupation" definition of disability, compared to the switch after five years to "any occupation" for Directors; (4) Riedel had, in 2007, advocated that UNUM re-classify Jenks from the Non-Partner Classification to the Directors group; and (5) UNUM subsequently reclassified him as Riedel had urged.

## II.     THE ARBITRATION HEARING

Shortly before the arbitration hearing opened in late 2011, Jenks moved to add two more causes of action against DLA Piper, both pled under ERISA:

(1)     A proposed Ninth Cause of Action for "equitable" remedies relating to DLA Piper's alleged interference with the processing of Jenks' benefits under the UNUM LTD Plan; and

(2)     A proposed Tenth Cause of Action, similar to the Ninth, but relating to the 2006 DLA Piper STD Plan. (*Jenks II*, Dkt. 10-19 at 10-15.)  The Arbitrator denied the motion. (*Id.*  at 20.)

In October 2011, on the eve of the merits hearing, DLA Piper successfully moved *in limine* for an order dismissing the Sixth Cause of Action (failure to provide ERISA plan documents) based

1    on the statute of limitations.  (*Jenks II,* Dkt. 11-3 at 3.)  Specifically, Jenks had claimed in

2    interrogatory responses that he had made his initial requests on approximately August 31, 2006, yet

3    the Sixth Cause of Action was first asserted in July 2010, more than three years later and therefore

4    outside the applicable statute.  (*Id,* Dkt. 1 at 28, ¶ 85.)

5            The merits hearing, which ultimately spanned 11 days, began in November 2011.  (*Id.*, Dkt.

6    1 at 30, ¶ 89.)  In conjunction with a discovery dispute that surfaced during arbitration, Jenks

7    received in January 2012 an electronic copy of the SPD for each employee classification for the

8    Amendment 39 UNUM policy.  (*Id.* at 10, ¶ 34.)  Each SPD sets forth, verbatim, the entire contents

9    of Amendment 39, excluding only information that describes specific benefits for other employee

10   groups.[4]  (For example, the "Director" SPD recites the entire text of Amendment 39 except the

11   monthly benefits maximums and eligibility criteria for other classifications, like Partners, Non-

12   Capital Partners, etc.)  Because Jenks had received the complete text of Amendment 39 in

13   December 2006, the SPDs provided literally no new information to Jenks.

14           To allow time for resolution of the discovery issues and review of the newly-produced

15   documents, the Arbitrator permitted a significant delay in the proceedings.  When the hearing

16   resumed in June 2012, she permitted Jenks to conform his claims to proof.  (*Id.,* Dkt. 11-4 at 16-20.)

17   Jenks did so, raising the following new claims at the close of evidence:

18           (1)      Jenks revived his ERISA documents claim (the previously dismissed Sixth Cause of

19   Action).  Specifically, Jenks argued that even if he had been timely provided the "Directors" SPD in

20   response to his prior requests, he had never been provided documentation in a way that

21   *acknowledged* that he belonged to the "Non-Capital Partners" class, which, he asserted, was the

22   correct classification for him.  (He made this claim even though he had received this classification's

23   SPD, and all others', in January 2012.)  Jenks argued his document production penalties continued

24   to accrue even as of the arbitration proceedings.  (*Id.,* Dkt. 11-6 at 2-8.)  Anticipating an objection

25   based on the statute of limitations, Jenks explained that his ERISA claims "did not accrue until

26

27   _____

     [4] This is consistent with the ERISA SPD regulations, which permit (but do not require) the
28   publication of separate SPD's for different eligibility groups within an ERISA plan.  29 C.F.R.
     §§ 2520.102-3 and -4.

1   March 2010, at the earliest, when Unum mailed Mr. Johnston the Unum claim file . . . ."  (*Id.* at 3.)

2         (2)     Jenks claimed breach of fiduciary duty under ERISA based on his alleged

3   misclassification as a "Director."  He claimed Riedel and her superior had concealed this fact from

4   him and requested that both be removed as ERISA fiduciaries.  (*Id.* at 8-10.)

5         (3)     In conjunction with his new claim for breach of fiduciary duty, Jenks also sought

6   declaratory relief under ERISA that, among other things, would acknowledge his membership in the

7   "Non-Capital Partner" group for purposes of the 2005 LTD Plan.  (*Id.* at 17-18.)

8         DLA Piper fully responded to each new claim in its closing brief.  (*Id.,* Dkt. 11-11 at 7-10;

9   Dkt. 11-12 at 1-7.)

10        Jenks further elaborated on his claims in a reply brief.  (*Id.,* Dkt. 11-16 at 5-16; Dkt. 11-17 at

11   1-3.)  He also contended that statements in DLA Piper's briefing were a concession that he did not

12   belong in any of the existing Amendment 39 classifications and that there should therefore be a

13   sixth classification just for him.  (*Id.*, Dkt. 11-16 at 11-12.)

14        In her final award on August 22, 2013, the Arbitrator ruled for Jenks on two claims relating

15   to the 2006 STD plan and awarded Jenks $93,535.67 plus interest and costs.  (*Id.*, Dkt. 1-1 at 3-4,

16   9.)  Noting that she gave Jenks "flexibility to conform his claims to proof," the Arbitrator also ruled

17   on the various ERISA claims related to the 2005 LTD Plan that Jenks had raised, and the parties had

18   fully argued, late in arbitration, noting that "[a]ll other claims are denied unless specifically granted

19   or held to be not arbitrable and/or outside the scope of this arbitration."  (*Id.* at 3, 7.)  First, the

20   Arbitrator once again held that Jenks' cause of action for failure to provide plan documentation was

21   time-barred.  (*Id.* at 7.)  Second, she rejected Jenks' claim that DLA Piper had breached a fiduciary

22   duty relating to the 2005 LTD Plan.  (*Id.*)  In the same section, the Arbitrator also denied any

23   declaratory or injunctive relief requested in connection with Jenks' claim that DLA Piper had

24   breached its fiduciary duties.  (*Id.*)  Finally, the Arbitrator denied Jenks' request to remove ERISA

25   fiduciaries on the grounds that Jenks' had not laid "a groundwork for establishing a breach of

26   fiduciary duty under ERISA."  (*Id.*)

27

28

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

1    **III.     JENKS' POST-ARBITRATION DOCUMENT REQUESTS**

2              On October 1, 2013, Jenks made another request for plan documentation.  In his request,

3    Jenks repeated his argument from arbitration that because DLA Piper had allegedly asserted that a

4    SPD applicable to Jenks "did not exist," DLA Piper was obligated to "generate one that comports

5    with the Amendment 39 plan" specifically for Jenks.  (FAC ¶23; SD Ex. E at 1.)  Jenks also

6    requested that DLA Piper provide the last policy that includes an "Attorneys" class, along with the

7    corresponding SPD for "Attorneys."  (SD Ex. E at 1.)  On October 31, 2013, DLA Piper responded,

8    providing a bevy of documents, including Amendment 39 to the 2005 LTD Plan, the pre-2005

9    certificate SPD for the "Attorneys in active employment" group, SPDs for all five classes under

10   Amendment 39, and a copy of the May 9, 2007 letter setting forth UNUM's determination of Jenks'

11   disability claim.  (*Id.,* Ex. F at 1.)  DLA Piper also provided Amendments 35-38 (whose plan

12   documents Jenks already possessed) and explained that these Amendments included an "Attorney"

13   classification.  (*Id.*)

14             In November 2013, Jenks filed *Jenks II*, urging this Court to vacate all aspects of the

15   arbitrator's award that ruled against him.  This Court dismissed the petition for lack of subject-

16   matter jurisdiction.  (*Id.*, Dkt. 54 (July 10, 2014 Order).)

17             While *Jenks II* was pending, DLA Piper filed a December 2013 petition in San Francisco

18   Superior Court, requesting entry of judgment in *Jenks I* confirming the arbitration award.  Jenks did

19   not file a cross-petition to vacate the award.  The Superior Court confirmed the award and entered

20   judgment as requested by DLA Piper, which was ultimately affirmed on appeal.  *Jenks I*, 243

21   Cal.App.4th 1 (2015); SD Ex. G (remittitur).

22             Jenks then filed the instant litigation ("*Jenks III*") on January 16, 2015.  DLA Piper timely

23   moved to dismiss this case on a variety of grounds, but also noted the pendency of *Jenks I* and *II*.

24   At a telephonic case management conference (CMC) on June 2, 2015, Jenks' counsel confirmed

25   that Jenks would not receive any greater cash amount under the desired "Non-Capital Partner"

26   classification, and that Jenks was instead concerned that UNUM would seek to enforce the 60-

27   month limit on "own occupation" benefits for "Directors."   However, Jenks' counsel conceded

28   there was no live dispute with UNUM over the issue.  Based on this representation, the Court

informed the parties it would stay the case.  Jenks' counsel asked the Court, as part of any stay order, to preemptively excuse Jenks from having to exhaust administrative remedies if the issue of "any occupation" disability arose with UNUM.  The Court declined to do so.  The Court subsequently issued an order staying the case, inviting Jenks (as it did at the CMC) to move to lift the stay if a dispute with UNUM over Jenks' continued eligibility for benefits arose and permitting DLA Piper to revive its arguments for dismissal when the stay was lifted.  (*Jenks III*, ECF No. 32 at 2.)  A motion to dismiss this action on procedural grounds (primarily, issue preclusion and claim preclusion in light of the *Jenks I* judgment) is also pending before the Court.  (*Jenks III*, ECF No. 41, argued 9/1/16.)

## IV.  JENKS' SECRET BUYOUT AGREEMENT WITH UNUM

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

1 ███████████████████████████████████████████████████████

2 ████

3          Jenks' counsel responded the ***very next day*** (September 11th), informing UNUM that he was

4 "favorably inclined" to a settlement agreement.  (PD Ex. A at 1.)  ████████████████████

5 ███████████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████

8 █████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ██████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████

14 ███████████████████

15          On September 24th, the parties agreed to extend Jenks' time to respond to UNUM's offer by

16 two weeks (until October 26th) in light of Jenks' financial advisor being busy with corporate tax

17 season.  (PD Ex. A at 2.)  ████████████████████████████████████

18 ███████████████████████████████████████████████

19 ███████████████████████████████████████████████

20 ███████████████████████████████████████████████████

21 █████████████████████████████████████████████

22 ███████████████████████████████████████████████████

23 █████████████████████████████  On October 21st, Jenks signed UNUM's form

24 of settlement, but not before receiving assurances from UNUM that the settlement's release would

25 not extend to his claims against DLA Piper.  (PD Ex. A at 4-5.)  ██████████████████

26 ████████████████████████████████████████

27 ███████████████████████████████████████████████████████

28 ████████████████████████████████████████████████

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

██████████████████████████████████████████████████

████████

## LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Actual "record evidence" is required to establish a genuine issue of fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). This requires that "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted; emphasis in original). A mere scintilla of evidence or evidence that is not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## ARGUMENT

## I.   JENKS' BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW

Jenks' first claim for relief is premised on the entirely unsupported assertion that but for DLA Piper's conduct, Jenks would not have accepted UNUM's settlement proposal, or perhaps, that he would have been able to secure a larger buyout amount. Not only is this claim untimely, but the damages Jenks seeks are both unavailable as "equitable" relief under ERISA and are in any case factually unsupported.

### A.   Jenks' Breach Of Fiduciary Claim Is Barred By The Statute Of Limitations

Jenks' current breach of fiduciary claim is barred by the applicable statute of limitations, 29 U.S.C. section 1113. Under ERISA, breach of fiduciary duty claims must be brought within the earlier of either (1) six years after the date of the last action which constitute a part of the breach or (2) three years after the "earliest date on which the plaintiff had actual knowledge of the breach or violation." *Id.* Regardless of which calculation the Court uses, Jenks' claim is untimely.

Jenks alleges that DLA Piper's breach of fiduciary duty was Riedel's act of "wrongly induc[ing] UNUM claims to reclassify Jenks as a 'Director,' based on false and fraudulent conduct

1    and representations." (FAC ¶29.) However, according to Jenks' own allegations, DLA Piper's

2    "wrongful inducement" of UNUM occurred in April and May 2007. (FAC ¶¶20-21.) Therefore,

3    under 29 U.S.C. section 1113(1), the six-year statute of limitations expired no later than May

4    2013—19 months prior to his Complaint. *See Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1225

5    (N.D. Cal. 2008) ("Section 413(1) bars claims for breach of fiduciary duty if a party does not file an

6    action within six years of the date of the alleged violation, regardless of when the participant

7    actually learns of the breach.")

8            However, Jenks' claim would also be untimely if the Court used the three-year statute of

9    limitations under 29 U.S.C. section 1113(2). In the Ninth Circuit, the "statute of limitations is

10   triggered by [a party's] knowledge of the transaction that constituted the alleged violation, not by

11   [his] knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985). Here, Jenks's

12   claim is untimely because he had knowledge of the transaction that constituted the alleged violation

13   no later than March 2011. First, he knew that the UNUM LTD plan had previously provided

14   benefits for "Attorneys," and that the group number previously used for "Attorneys" was now being

15   used for the "Non-Capital Partners Group," as he had both Amendments 37 and 39 no later than

16   March 2010. (*Jenks II*, Dkt. 11-7 at 39; FAC ¶10.) For the same reason, he also knew that DLA

17   Piper partners, like "Attorneys" had an unchanging definition of disability, compared to the 60-

18   month definition switch for Directors. (*Id.*) He also knew no later than March 2011 that Riedel

19   had, in 2007, advocated that UNUM re-classify Jenks from the Non-Partner Classification to the

20   Directors group and that UNUM subsequently reclassified him as Riedel had urged.[6] (*See, e.g.*,

21   *Jenks II*, Dkt. 11-7 at 19) ("Stephanie Rydell [Policy Holder] called stating that UNUM has wrong

22   facts regarding Todd's classification. He is not at the 20K max. He should be at the 15K max

23   benefit. . . .").)

24

25

26   _____

     [6] Indeed, Jenks has acknowledged that even the earlier receipt of the UNUM claim filed in March

27   2010 was the triggering event for the statute of limitations. (*Jenks II*, Dkt. 11-6 at 3 ("Here, the
     claim did not accrue until March 2010, at the earliest, when Unum mailed Mr. Johnston the Unum

28   claim file . . ..")

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

This knowledge was sufficient to trigger the statute of limitations.  *See Blanton*, 760 F.2d at 992.  Accordingly, even if the Court applies section 1113(2), the statute of limitations for his breach of fiduciary duty claim still expired no later than March 2014—long before Jenks filed his original complaint in this action in January 2015—and the claim is time barred.

**B.    Jenks' First Claim Also Fails Because His Damages Are Either Non-Existent Or Too Speculative**

Even if Jenks' breach of fiduciary duty claim were timely, it would still fail as a matter of law for the separate and independent reason that he has not alleged any harm caused by DLA Piper's conduct, let alone harm that is compensable under the remedial scheme of ERISA.

"It is black-letter law that damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery." *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) (quoting *Mozzetti v. City of Brisbane*, 67 Cal. App. 3d 565, 577 (1977)); *see also Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1167 (E.D. Cal. 2009) (quoting *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989)) ("A fundamental rule of law is that whether the action be in tort or contract compensatory damages cannot be recovered unless there is a causal connection between the act or omission complained of and the injury sustained.").

Here, Jenks claims that his damages result from being forced to accept "UNUM's heavily discounted buyout proposal" because of "the profound doubt, caused by DLA Piper, about the ongoing security of his disability benefits."  FAC ¶ 30.  The undisputed facts show that these claimed fears had no objective basis.  As shown above, throughout his settlement negotiations with UNUM, Jenks was given *no* reason to believe that UNUM was planning to challenge his continued benefits eligibility.[7]  Most tellingly, there is no evidence that UNUM was planning to challenge Jenks' continuing entitlement to benefits based on an "any occupation" definition of disability.  █

████████████████████████████████████████████████████████████████████████████

---

[7] And, if he did ever feel as though that was the case, he had a standing invitation from the Court to seek to lift the stay in this matter and seek the Court's protection.  Tellingly, he never took the Court up on its invitation.



In sum, Jenks' decision to accept UNUM's settlement was his and his alone.

[8] The record also shows that Jenks' related argument (that he was compelled to accept UNUM's offer, in part, because the offer was "severely time-limited," FAC ¶26) is flat-out untrue. And, regardless of UNUM's deadline, Jenks let UNUM know that he was "favorably inclined" to accept their settlement offer *the very next day after first receiving UNUM's offer*. (PD, Ex. A at 1.)

Furthermore, UNUM made clear to Jenks that it would still discuss settlement with him even after October 26th, although it would need to recalculate the offer in light of the changing interest rates and the amount of benefits already paid to Jenks during the course of negotiations. (*Id.* at 3.)

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████ DLA

Piper should bear no liability for Jenks' free choice, nor should it be left holding the bag for Jenks'

after-the-fact regrets.

Even under general legal principles that apply to awards of economic damages, there is no

basis for such a claim, which in essence asks the defendant to backstop the plaintiff's settlement

strategy decisions.  *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 629 F.

Supp. 2d 259 (S.D.N.Y. 2007) (dismissing, on a Rule 12 motion, an allegation that the defendant

law firm's alleged conflicts of interest in handling a settlement negotiation forced the plaintiff to

accept a $5 million settlement rather than a $25 million settlement from his former employer;

among many other deficiencies, there was no allegation that the former employer ever considered

offering as much as $25 million); *Fagundes v. Lane*, No. 12–CV–1634, 2014 WL 1276373

(E.D.N.Y. Mar. 27, 2014) (dismissing, on a Rule 12 motion, employees' allegation against their

labor union that they were "forced" to settle wage-and-hour claims for less than they were really

worth, because of the manner in which the union had handled a parallel contract grievance against

the workers' employer; absent allegations of fraud or duress there was no reason to hold the union

liable for plaintiffs' "freely determined choice" to enter into a settlement agreement);  *see also*

*Marshak v. Ballesteros*, 72 Cal. App. 4th 1514 (1999) (holding, on summary judgment, that the

"mere probability" that an accepted settlement was worse than a potential trial result did not

establish, to the required legal certainty, that the attorney defendant's legal malpractice resulted in

damages; the plaintiff was required to prove that rejecting the settlement and recovering damages

would have resulted in a better recovery).

But all of this assumes that "damages" are even available for an ERISA breach of fiduciary

duty, which they are not.  ERISA section 502(a)(3) permits "equitable" relief, which does not

extend to every form of "damages" available at the common law.  *See CIGNA Corp. v. Amara*, 563

U.S. 421, 442-443 (2011).  While a monetary remedy of "equitable surcharge" was available at

equity (and is therefore also available under ERISA), its application to ERISA beneficiaries is

limited to those who have experienced "actual harm."  *Id.* at 444.  The plaintiffs who have prevailed on such claims have all suffered concrete and immediate injuries from fiduciary misrepresentations (typically, an actual loss of expected benefits), which are far cry from Jenks' contention that the lump-sum settlement value of his LTD policy was impaired to some unknown degree by a pending dispute over plan drafting.  *See McCravy v. Metro. Life Ins. Co.,* 690 F.3d 176 (4th Cir. 2012) (permitting claim, for pleading purposes, by mother of murdered daughter who was denied a defined death benefit because fiduciary breach allegedly misled mother into believing that daughter was still covered by life insurance policy); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869 (7th Cir. 2013) (permitting claim by participant in health plan who was misled into believing that her planned bariatric surgery would be covered for a $300 copay and was then billed $77,974 after she underwent surgery in reliance on plan's incorrect assurances); *Echague v. Metro. Life Ins. Co.*, 43 F. Supp. 3d 994 (N.D. Cal. 2014) (holding that employer-fiduciary hopelessly confused employee about process for maintaining life insurance coverage, resulting in lapse of coverage by the time of her death; her surviving spouse was accordingly entitled to face value of lapsed benefit).  By contrast, the remedy of "equitable surcharge" does not exist simply to punish employers for free-floating ERISA violations that have caused no concrete harm.  *See Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165 (9th Cir. 2012) (rejecting availability of "equitable surcharge" to vindicate plan participants' alleged interest in receiving an accurate SPD, where there was no evidence that inaccurate description of pension offsets had caused any harm to the plaintiff).

This distinction is particularly relevant here, where Jenks cannot claim that he was in any way lulled into inaction by the missing "Attorneys" classification; to the contrary, he had in fact been arguing for such a classification for more than two years.  And Jenks has never once disputed that he received every dollar he was entitled to under the Plan—as he would not have received any greater cash amount under the "Non-Capital Partner" classification than he actually did under the "Directors" classification.

## II.    JENKS' CLAIM FOR DAILY PENALTIES ALSO FAILS AS A MATTER OF LAW

It is undisputed that DLA Piper timely responded to Jenks' October 1, 2013 request for plan documentation.  (FAC ¶23; SD Ex. F.)  It is also undisputed that DLA Piper's response included not

1    only the full Amendment 39 plan document, but also the SPD for *every single* benefits classification

2    under that Amendment: Capital Partners, Non-Capital Partners, All Executives, Directors, and All

3    Other Employees.  (*Id.*)  Nevertheless, despite this generous response and an arbitral order refusing

4    to declare that Jenks was misclassified as a member of the Directors classification, Jenks continues

5    to insist that DLA Piper's response was deficient.  This claim fails both on its facts and because it

6    represents a fundamental category error:  the alleged errors in the plan documentation might

7    conceivably have been corrected through a properly pleaded claim for reformation (although this

8    remedy is now moot), but it would never justify for statutory penalties.[9]

9          **A.    DLA Piper Was Not Required To Create An Entirely New Summary Plan
                 Description For Jenks In Its October 31st Response, And Its Response Did Not
10                Prejudice Jenks.**

11         Jenks does not dispute that on October 31, 2013, DLA Piper responded to his October 1,

12   2013 request for plan documentation; nor does he dispute that DLA Piper provided him with SPDs

13   for the five benefit classifications included in Amendment 39—including the Non-Capital Partners

14   classification that Jenks' claims he should have been classified under.  (FAC ¶¶ 7, 23)  Rather,

15   Jenks' entire claim is premised on his continued insistence that Amendment 39 was improperly

16   drafted and he should have received an SPD for the undocumented "Attorneys" classification.

17         In support of this assertion, Jenks relies on a misreading of DLA Piper's final post-

18   arbitration hearing brief.  In its brief, when discussing DLA Piper's 2007 decision to send Jenks the

19   entire Amendment 39 rather than an individual SPD, Defendant wrote: "Indeed, providing an SPD

20   booklet to Claimant would have been ill-advised, because none clearly applied to his claim."  (*Jenks

21   II*, Dkt. 11-12 at 1.)  Elsewhere, DLA Piper wrote: "Indeed, it was not possible to determine to

22   which class of benefits Claimant belonged from reviewing the LTD Plan booklets because a booklet

23   for Associate Attorneys did not exist."  (*Id.*)  According to Jenks, these sentences somehow

24

25   ───────────────────
     [9] While it is unclear, the FAC also suggests Jenks is claiming penalties for DLA Piper's failure to
     provide him with the SPD applicable to associate attorneys under Amendment 37.  (FAC ¶24).
26   However, if Jenks is indeed making this claim, it necessarily fails as a matter of law, as Amendment
     37 is not the operative Amendment and a plaintiff cannot receive penalties for a Plan
27   Administrator's failure to provide outdated plan documents. *Jackson v. E.J. Brach Corp.*, 937 F.
     Supp. 735, 739 (N.D. Ill. 1996) ("But we can discern no statutory basis for penalizing an
28   administrator for failing to provide documents which have no current application whatsoever.")

───────────────────
DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

1   constitute DLA Piper's admission that "none of the documentation theretofore provided to [Jenks],

2   nor even any of the extant documentation which had been withheld from him, constituted a proper

3   SPD applicable to his claim."  (FAC ¶22.)

4        This is a zealous misreading of the record.  It is clear from the surrounding context that DLA

5   Piper was *not* admitting that none of the existing classifications applied to Jenks.[10]  Rather, all the

6   brief was acknowledging was that there was no classification specifically labeled "Attorneys."

7   (Hence, the line "because a booklet for Associate Attorneys did not exist.")  Therefore, DLA Piper

8   was merely explaining that its decision to send Jenks the entire Amendment 39 was reasonable

9   because, based solely on the names of the classifications, it would be unclear to Jenks where he

10  belonged.[11]  (In contrast, an Attorneys classification, if it existed, would have "clearly applied to

11  [Jenks'] claim.")

12       In any event, the cases Jenks has cited in prior proceedings for the proposition that DLA

13  Piper is "obligated to generate" a new SPD for him are inapposite to support a claim for statutory

14  penalties.  In *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735, 740 (N.D. Ill. 1996), which is the

15  foundation of the other cases Jenks has cited, the court asserted the uncontroversial proposition that

16  "[i]f [the latest SPDs] do not exist at the time of a request, it is consistent with the aims of ERISA to

17  impose a penalty on the plan administrator . . ..  There is nothing keeping the administrator from

18  preparing a mandatory document where none previously existed . . .."  However, in that instance,

19  the offending plan administrator failed to produce *any* documents to the employee that satisfied the

20  requirements of a SPD.  *Id.*  The same was true in *Sunderlin v. First Reliance Standard Life Ins.*

21  *Co.*, 235 F. Supp. 2d 222 (W.D.N.Y. 2002), where the administrator produced "the only document

22

23  _____

24  [10] Indeed, the remainder of the argument made clear that it was eminently reasonable for Riedel to urge that Jenks be classified as a Director.

25  [11] Supplying the full Amendment 39 plan document was a sufficient response to the request for documents, as Amendment 39 contained all the necessary requirements for a SPD under the federal regulations.  *See* 1 Ronald J. Cooke, *ERISA Practice and Procedure* § 3.27 (2d ed. 2012) ("Congress did not intend to create an obligation [under the penalties statute] to provide individualized attention to participants.  Illustrative of this principle is *Allen v. Atlantic Richfield Retirement Plan* [480 F. Supp. 848 (E.D. Pa. 1979)], which held that distribution of a comprehensive explanatory book summarizing the plan was sufficient to satisfy [ERISA's] requirements as to the summary plan description...")

26

27

28

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC

1    that it had" - an insurance policy that also did not satisfy the requirements of a SPD.  *Id.* at 231-32.[12]

2    Both of these cases involve situations where a defendant did not have a SPD for a benefits

3    classification that existed under the terms of the plan.  Those facts are far removed from the case at

4    bar, where, despite the fact that DLA Piper timely provided SPDs for *every single benefits*

5    *classification* that actually existed under Amendment 39 as well as the Amendment itself, Jenks

6    contends that DLA Piper was still obligated to draft a new SPD for some nonexistent classification.

7    None of his heretofore cited authorities stand for such a proposition.

8            Even assuming, *arguendo*, that DLA Piper was obligated to create a new SPD solely for

9    Jenks (which DLA Piper denies), Jenks' claim for penalties would still fail because he has not

10    alleged any prejudice as a result of DLA Piper's response.  *See Kaiser Permanente Emp.'s Pension*

11    *Plan v. Bertozzi*, 849 F. Supp. 692, 702 (N.D. Cal. 1994) (Noting that "[a]lthough prejudice is not

12    required to prevail on a section 1132(c) penalty claim," summary judgment on the penalties claim

13    was appropriate because plaintiff could not "establish that she had been prejudiced as a result" of

14    the plan administrator's alleged failure.)  As in *Bertozzi*, Jenks has not alleged—and cannot

15    allege—any prejudice resulting from DLA Piper's October 31 response.  Jenks has repeatedly

16    contended that he should have been classified in the Non-Capital Partners benefits group under

17    Amendment 39.  (*See, e.g.*, FAC ¶7.)  He also claims, although this is not actually true, that the

18    change from Attorneys to Non-Capital Partners between Amendments 37 and 39 was a change "in

19    name only." (*Id.*)  Therefore, even if DLA Piper was obligated to create a new "Attorneys"

20    summary plan description under Amendment 39, according to Jenks, that document would look

21    *exactly the same* as the Non-Capital Partners summary plan description Jenks received on October

22    31, only with the words "Non-Capital Partners" replaced by "Attorneys."[13]  It defies credibility to

23    say that Jenks was prejudiced by this minor discrepancy.  Similarly, it is impossible for Jenks to

24

25   [12] *Cline v. Indus. Maint. Eng'g & Contracting Co.,* 200 F.3d 1223 (9th Cir. 2000) which Jenks cited in his October 1 letter, simply cites *Jackson* en route to granting summary judgment for the defendant because the defendant was not the ERISA plan administrator.

26

27   [13] Jenks admitted as much in his final reply brief in arbitration: "If Riedel were so concerned about nomenclature she could have heeded Larsen's advice, reprinted the Non-Capital Partners booklet, and changed its name to 'Attorneys.'  The booklet, in other words, was already drafted . . .." (*Jenks II*, Dkt. 11-16 at 12.)

28

1    show DLA Piper's October 31 response was made in bad faith, as an artribal award had only

2    months earlier refused to declare that Jenks was misclassified as a Director under the Plan.  *See*

3    *Bertozzi*, 849 F. Supp. at 702 (noting that the absence of bad faith was "[a]dditional support for

4    denying [plaintiff's] section 1132(c) claim.")  As such, Jenks' claim for penalties must be

5    dismissed.

6        **B.    Jenks' Claim Is Really An Attempt To Receive Daily Penalties For The Alleged**
7             **Fiduciary Breach Associated With Jenks' Classification As A "Director."**

8        The foregoing discussion reveals the fundamental problem with Jenks' penalties claim.  His

9    argument is that DLA's breach of fiduciary duty in 2007 (or perhaps, even earlier in 2005, when the

10   plan document was drafted) resulted in an error in the plan document itself (*not* just in its summary

11   plan descriptions).  Ergo, Jenks claims, any delivery of  the plan booklets, even if they faithfully

12   reflected the language of the plan itself, violated the penalties statute.[14]

13       For such a wrong there might once have been a remedy, but it is not the remedy sought by

14   Jenks here.  Instead, if Jenks believed that DLA Piper had caused mistaken plan documents to be

15   prepared as a result of a fiduciary breach, reformation might have been available as an equitable

16   remedy under ERISA section 502(a)(3).  *See Skinner*, 673 F.3d at 1165 (recognizing availability of

17   reformation as a remedy for a breach of fiduciary duty).  More specifically, if as Jenks suggests,

18   Amendment 39 mistakenly either deleted the "Attorneys" classification from Amendment 38 or

19   mislabeled the Non-Capital Partners classification, such a mistake might have, at one point, been

20   grounds for a reformation remedy.[15]  However, to allow Jenks to shoehorn what should actually be

21

22   [14] This also leads to Jenks' logic that he could have, every year, month, or even day re-requested the
23   plan documents and that so long as the documents did not conform to *his* idea of what they should
     say, he would accrue a new claim for penalties.

24   [15] Regardless of the procedural obstacles preventing Jenks from now raising a claim for
     reformation, *see discussion infra*, such a claim would almost certainly fail in light of Jenks' inability
25   to point to any actual evidence that Amendment 39 "contains terms that fail to reflect the drafter's
     true intent."  *Skinner*, 673 F.3d at 1166.  *See* Factual Background, Section I, *supra* (explaining why
26   Amendment 39's Non-Capital Partner classification was not the result of a simple name change
     from Amendment 38's Attorneys classification).   We note that even Jenks himself seems to be
27   unclear on whether he should simply be classified as a Non-Capital Partner or as an "Attorney," yet
     DLA Piper is faulted for not changing the plan documents to meet Jenks' own uncertain
28   expectations.

a reformation claim into a failure to provide plan documents claim would turn ERISA on its head by allowing plaintiffs to obtain $110/day penalties for every fiduciary breach that is reflected in plan documentation, even if the breach has caused no harm and even if the plan administrator is faithfully providing accurate copies of the extant plan documentation.  This mixes and matches two different sections of ERISA, contrary to Congressional intent and for no good reason.[16]

Nor would a bid for reformation be tenable at this point in time.  As an initial matter, reformation is a merely a remedy for a breach of fiduciary duty.  Therefore, for the reasons discussed in Argument Section I(A), *supra*, any claim for reformation would be barred by the statute of limitations (indeed, here the fiduciary breach, if any, arguably occurred in 2005, when Amendment No. 39 was first drafted and did not include an "Attorneys" classification or clear language supporting the notion that "Non-Capital Partners" included even associate attorneys at DLA Piper).  The hypothetical claim would also be moot in light of Jenks' buyout with UNUM.  "A case becomes moot whenever it 'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'"  *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)).  Here, by his own accord, Jenks has voluntarily, and with finality, settled his remaining disability claim under the Plan.  Even if Jenks could successfully prove a claim for reformation (which DLA Piper denies), Jenks would receive no further benefits from the reformed plan because he has already settled any remaining disability benefits he may have.  *See Parsons v. Bd. of Trustees of the Nev. Resort Ass'n*, No. 12-cv-00299, 2012 WL 3319742, at *5 (D. Nev. Aug. 13, 2012) (even after *Amara*, reformation is a prospective remedy).  Therefore, the remedy of reformation is *now* unavailable, even if Jenks could somehow plead a timely claim for fiduciary breach that does not merely reiterate the same claim for breach of fiduciary duty that the Arbitrator rejected in 2013.

---

[16] Had Congress intended to create penalty for benefit misclassifications and reformation causes of action under 29 U.S.C. section 1132(a)(3), it certainly could have done so, as it did for failures to provide plan documentation under 29 U.S.C. section 1132(c)(1).  "[W]here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Keene Corp. v. U.S.*, 508 U.S. 200, 208 (1993) (quoting *Russello v. U.S.*, 464 U.S. 16, 23 (1983)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, DLA Piper's motion should be granted.  In addition, DLA Piper urges the Court to dismiss this action for the additional reasons urged in its pending motion to dismiss based on procedural grounds.


Dated:  December 15, 2016                          ARNOLD & PORTER LLP



                                                   By:   /s/ Christopher T. Scanlan
                                                         Christopher T. Scanlan

                                                   Attorneys for Defendant,
                                                   DLA Piper LLP (US)

DEFENDANT'S NOTICE AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.: 15-cv-00254-VC